UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN A. KERZMAN, et al.,

    Plaintiffs,

v.

NCH CORPORATION,

    Defendant.

CASE NO. C05-1820JLR

ORDER

## I. INTRODUCTION

Before the court are two motions: a motion for summary judgment (Dkt. # 54) from Defendant NCH Corporation and a motion for partial summary judgment (Dkt. # 58) from Plaintiffs Steven Kerzman and Lisa Brostrom. The court has reviewed the parties' briefing and supporting evidence, and heard the argument of counsel. For the following reasons, the court GRANTS in part and DENIES in part Defendant's motion (Dkt. # 54) and DENIES Plaintiffs' motion (Dkt. # 58).

## II. BACKGROUND

This is a personal injury suit wherein Plaintiffs were injured while using a solvent manufactured by Defendant, identified as "DS-67 Plus." Defendant is a corporation that

ORDER – 1

manufactures industrial maintenance and cleaning solutions. Cohen Decl. ¶ 4. DS-67 Plus is a product sold and marketed by Defendant as a spot cleaning solution for carpet and upholstery.  Defendant does not market DS-67 Plus spot remover directly to the general public; it markets solely to commercial users of industrial cleaning products. Id. at ¶ 7.

Plaintiff Steven A. Kerzman is the owner and sole proprietor of Dun Rite Cleaning Service ("Dun Rite"), located in Ferndale, Washington.  In addition to performing general cleaning services, Mr. Kerzman, through Dun Rite, also performs professional carpet cleaning services.  Plaintiff Lisa M. Brostrom is Mr. Kerzman's fiancé and works for Dun Rite as a bookkeeper and periodic custodian.

In April 2004, Mr. Kerzman was looking for a new stain remover to use in his carpet cleaning business, and met with one of Defendant's representatives to discuss spot removers.  During this meeting, Mr. Kerzman informed the representative that he used his current spot remover with an "extractor."[1]  Marchese Decl., Ex. B (Kerzman Dep.) at 160.  According to Mr. Kerzman, the Defendant's representative recommended that Mr. Kerzman use the DS-67 Plus aerosol cleaning product, knowing that Mr. Kerzman would be using an extractor with the solvent. Id.  Mr. Kerzman purchased a dozen cans of DS-67 Plus.  Defendant did not provide a Material Safety Data Sheet ("MSDS") to Mr. Kerzman with the shipment of DS-67 Plus.

Mr. Kerzman and Ms. Brostrom, who were living together in 2004, used the DS-67 Plus for both their personal and business use.  Plaintiffs were using DS-67 Plus for their personal use when the accident giving rise to this suit ocurred.  On June 20, 2004,

---

[1]The parties use the term "extractor" when referring to the appliance used to extract dirt, chemicals, or water from carpet.  This appliance appears to be similar, if not identical, to the common household vacuum cleaner.

ORDER – 2

Plaintiffs decided to use DS-67 Plus to clean the carpet in Mr. Kerzman's used speed boat.[2] Prior to using the solvent, Plaintiffs read the warning label on the bottle of DS-67 Plus. Buckland Decl., Ex. 1 (Kerzman Dep.) at 170; Id., Ex. 3 (Brostrom Dep.) at 70, 73. At the time they were cleaning the boat, it was stored in the garage attached to their home. Prior to cleaning, Mr. Kerzman opened the garage doors and the side door for ventilation while using the DS-67 Plus. Once the doors were open, Mr. Kerzman removed the seats of the boat to obtain greater access to the carpet, and Ms. Brostrom sprayed the DS-67 Plus on the boat's carpet.

After spraying the carpet with DS-67 Plus, Ms. Brostrom left the garage to allow the solvent time to dissolve into the carpet while she went into the house to get their residential carpet extractor, the "Little Green Bissell," manufactured by the Bissell Company. Ms. Brostrom intended to extract the solvent from the carpet using the extractor. Ms. Brostrom climbed into the boat with the extractor and asked Mr. Kerzman, who was outside the boat, to plug it into the wall socket in the garage. There is no dispute that when Ms. Brostrom turned the extractor on, the spark from the ignition of the extractor caused an explosion and engulfed Ms. Brostrom in flames. Ms. Brostrom suffered burns to over 55% of her body and Mr. Kerzman suffered burns to his arms and face.

Plaintiffs sued Defendant for (1) manufacturer negligence; (2) manufacturer strict liability; and (3) expressed and/or implied warranty. Plaintiffs' claims are based on Defendant's failure to provide adequate warnings and instructions with its DS-67 Plus product, and for representing that the solvent was safe to use with an extractor.

---

[2] For the most part, the parties do not dispute the nature of events that occurred on June 20, 2004. To the extent there are disputed facts the court relays the evidence in the light most favorable to Plaintiffs.

ORDER – 3

### III.  ANALYSIS

In resolving this motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party meets its burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

The court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. In analyzing Plaintiffs' claims, the court must therefore apply Washington law. Snead v. Metro Prop & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001) (holding that federal courts sitting in diversity apply state substantive law and federal procedural law) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  All of Plaintiffs' claims against Defendant arise under the Washington Products Liability Act ("WPLA"), RCW § 7.72, et seq.  The WPLA is a comprehensive statutory scheme that effectively limits all products liability claims in Washington to a single cause of action pursuant to the WPLA, with at least four methods for establishing liability.

ORDER – 4

**A. Plaintiffs Offer Sufficient Evidence to Support Their Claim Under the WPLA For Failure to Warn.**

Plaintiffs bring two causes of action based on a products liability theory: manufacturer's negligence and manufacturer's strict liability.[3] Compl. at ¶¶ 5.1-6.3. As stated above, in Washington, all product liability claims are governed by the WPLA. Thus, Plaintiffs need not distinguish between their claim for strict liability and their claim for negligence, both fall under the exclusive coverage of the WPLA. See Wash. Water Power Co. v. Graybar Elec. Co., 774 P.2d 1199, 1204 (Wash. 1989) (holding that the WPLA preempts common law product liability claims). As discussed below the WPLA has one standard for claims against manufacturers and that standard is strict liability. Accordingly, the court dismisses Plaintiffs' manufacturer negligence claim because, as conceded to by Plaintiffs' counsel at oral argument, there is no independent manufacturer negligence claim in Washington.

    **1. Failure to Warn**

Under the WPLA, "[a] product manufacturer is subject to liability to a claimant if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was not reasonably safe as designed or not reasonably safe because adequate warnings or instructions were not provided." RCW § 7.72.030(1). Despite the negligence language in this section, Washington courts apply the strict liability standard to allegations of inadequate warnings and instructions. Ayers v. Johnson & Johnson

---

[3]Plaintiffs, in their Complaint, state that Defendant's defective design caused their injuries. Plaintiffs make this statement under their claim for "manufacture negligence." They did not assert an independent claim for defective design, nor did they argue defective design in their responsive brief, or at oral argument. Because Plaintiffs do not offer any argument or evidence to support a theory that the DS-67 Plus product was not reasonably safe as designed, as required by RCW § 7.72.030, the court grants Defendant's motion for judgment on this claim.

ORDER – 5

Baby Prod. Co., 818 P.2d 1337, 1334 (Wash. 1991); Falk v. Keene Corp., 782 P.2d 974, 982 (Wash. 1989).

The definition of "not reasonably safe" in the context of a claim relating to inadequate warnings and instructions is provided in the WPLA; it provides:

> A product is not reasonably safe because adequate warnings or instructions were not provided with the product, if, at the time of manufacture, the likelihood that the product would cause the claimant's harm or similar harms, and the seriousness of those harms, rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided the warnings or instructions which the claimant alleges would have been adequate.

RCW § 7.72.030(1)(b). The statute further provides that, in determining whether a product was not reasonably safe, the trier of fact shall consider whether the product was "unsafe to an extent beyond that which would be contemplated by the ordinary consumer" – the "consumer-expectation test." Falk, 782 P.2d at 980; RCW § 7.72.030(3).

### 2. The Consumer-Expectation Test

Defendant argues that the reasonable commercial consumer would have appreciated the danger posed by DS-67 Plus, taking into account the warnings on the label. Moreover, Defendant argues that Washington law does not require a warning to inform a user of every possible type of injury.

The warning affixed to the bottle of DS-67 Plus used by Plaintiffs provides, in part:

> **DANGER: EXTREMELY FLAMMABLE LIQUID AND VAPOR! - HARMFUL IF INHALED - CAUSES SEVER SKIN IRRITATION CAUSES EYE IRRITATION - HARMFUL OR FATAL IF SWALLOWED - CONTENTS UNDER PRESSURE - KEEP OUT OF REACH OF CHILDREN**

Marchese Decl., Ex. A. The warning label also provides first aid tips for inhalation, skin and eye irritation, and ingestion of the solvent, but does not provide tips relating to burns.

ORDER – 6

1   The stated use of the product is to "remove[] grease, dirt, oil, stains, lipstick, shoe polish,
2   etc. from carpets, upholstery, etc." Id.  Finally, the warning label states that the contents
3   are under pressure, and "do not use or store near heat, hot surfaces, sparks or open
4   flame." Id.

5         The question before the court is whether the evidence supports a finding that these warnings were inadequate to warn the ordinary consumer of the danger of using an extractor, which causes a spark when started, with DS-67 Plus.  Defendant first contends that the consumer-expectation test is to be measured with regard to the sophistication of the end user of the product.  That is, the ordinary consumer in this matter would be commercial and industrial users, such as a professional carpet cleaner, and not just a member of the general public that buys carpet cleaner at their local grocery store.  Defendant asks the court to measure Plaintiffs' claim as one requiring them to prove that the ordinary professional carpet cleaner would not have comprehended the danger of using the solvent with an extractor.

      In support of its "commercial user" argument, Defendant cites to Baughn v. Honda Motors Co., Ltd., 727 P.2d 655 (Wash. 1986), for the proposition that the consumer-expectation test takes into account the relative sophistication of the end user.  In Baughn, the Washington Supreme Court, citing a pre-WPLA case, explained that in determining the adequacy of a warning as compared to the user's expectation, the question the court asks is "[w]as the warning sufficient to catch the attention of persons who could be expected to use the product; to apprise them of its dangers and to advise them of the measures to take to avoid those dangers?"  Id. at 662-663.

      While the court does not adopt the commercial user test proposed by Defendant, it does agree that the Washington courts look to the class of persons expected to use the product in determining the adequacy of the warning.  Thus, at trial Defendant may offer

ORDER – 7

evidence to support a jury instruction explaining the "ordinary user" test as taking into account the relative class of persons that buy and use this product.  Evidence to support such an instruction would necessarily include evidence that Defendant sold DS-67 Plus only to carpet cleaning professionals, or others similarly situated, and not to the public at large.  The court is satisfied, however, that under either standard for determining the end user's expectation, Plaintiffs have presented sufficient evidence to create a genuine issue for trial as to the question of whether the warning on the DS-67 Plus bottle was adequate. The DS-67 Plus label states that it is to be used to clean spots from carpet and upholstery, yet does not advise the user to avoid a common tool for cleaning carpets, the vacuum or extractor.

The court also rejects Defendant's argument that Washington law does not require that every possible danger be explained on the label.  While it may be true that this is the law in Washington, the court is satisfied that warning a user of a carpet cleaning product to avoid using a vacuum or extractor with it, lest subject oneself to a flash fire, is one warning a jury could find worthy of noting on the label.  This is especially true given that the label already lists a variety of dangers posed by the product, i.e., inhalation, ingestion, eye and skin irritation – none of which appear to cover injuries as extensive as Ms. Brostrom's injuries.

Defendant also spends a much energy arguing that Mr. Kerzman had a habit of not complying with regulatory, safety requirements in the general operation of his business. For example, Defendant argues that Mr. Kerzman failed to comply with Washington's Industrial Safety and Health Act and was unfamiliar with The National Fire Protection Association and Hazardous Material Identification System Warning Ratings.  A knowledge of which, according to Defendant, would have put Mr. Kerzman on notice of

ORDER – 8

the danger of using DS-67 Plus with an extractor.[4] Thus, Defendant asserts that regardless of the adequacy of its warning on DS-67 Plus label, Mr. Kerzman would have likely ignored the warnings on the label and not appreciated the danger DS-67 Plus posed. See Def.'s Mot. at 19-20.

Defendant relies on Soproni v. Polygon Apt. Partners, to support its theory that Plaintiffs' claims should be dismissed because even if there were additional warnings on the bottle of DS-67 Plus, Plaintiff would have ignored them, as was his general practice. 971 P.2d 500, 505 (Wash. 1999). In Soproni, the plaintiff argued that the manufacturer of a window failed to warn her that a child could open the window and fall out. Id. The Washington Supreme Court affirmed the lower court's finding that because the mother already knew that the child could open the window and potentially fall out, but did nothing to prevent it from happening, no warning would have made a difference in preventing the accident. Id. This is inapposite to Mr. Kerzman's alleged failures to comply with *other* safety regulations. Defendant offers no evidence to suggest that Mr. Kerzman had once before witnessed the explosive nature of DS-67 Plus and chose to ignore it. In fact, the evidence before the court is to the contrary. Mr. Kerzman testified that he used DS-67 Plus on a number of previous occasions with no problems. Kerzman Dep. at 167. More importantly, Plaintiffs testified that they read the label on the bottle of DS-67 Plus. Accordingly, even if it was Mr. Kerzman's general practice to ignore warning labels, he did not do so in this instance.

---

[4]Defendant also relies on the warnings in the MSDS to support their argument that at least Mr. Kerzman was adequately informed of the dangers of using DS-67 Plus. Mr. Kerzman testified, however, that he did not receive the MSDS with the shipment of DS-67 Plus, and the first time he saw it was after the accident. Kerzman Dep. at 170-71.

ORDER – 9

### 3. Causation

Plaintiffs allege that Defendant's warnings and instructions on its DS-67 Plus solvent were inadequate. In order to recover under the WPLA, Plaintiffs must show that their injuries were proximately caused by a product that was not reasonably safe because adequate warnings or instructions were not provided. RCW § 7.72.030(1). Plaintiffs must show that Defendant's inadequate warnings were the proximate cause of their injuries. To meet the requirements of proximate causation, Plaintiffs must put forth evidence of both cause in fact and legal causation. Baughn, 727 P.2d at 663-664. "Cause in fact refers to the 'but for' consequences of an act – the physical connection between an act and an injury." Hartley v. State, 698 P.2d 77, 83 (Wash. 1985). Legal causation, on the other hand, involves the "determination of whether liability should attach as a matter of law given the existence of cause in fact." Id.

The court finds there is sufficient evidence to support Plaintiffs' cause in fact showing. A jury could find that "but for" the inadequate warning on the bottle of DS-67 Plus, Plaintiffs would not have used the extractor with Defendant's solvent. Moreover, this question is not one that should be decided on summary judgment; it is usually a jury question. Baughn, 727 P.2d at 664.

The next issue is whether there is legal causation to support Plaintiffs' claim. Washington court's consider legal causation in the context of a number of public policy considerations, such as the ends of justice, importance of precedent, and application of common sense, which stem from the particular facts of the case. Anderson v. Weslo, Inc., 906 P.2d 336, 341 (Wash. 1995). That is, should the law impose liability in this type of situation? Here, the court is convinced that all of these factors weigh in favor of finding legal causation in this case. The court rests this finding on the evidence that

ORDER – 10

suggests that Defendant's solvent was so flammable as to ignite a flash fire with just the spark from an extractor.

The court finds that Plaintiffs have put forth sufficient evidence to establish a genuine issue of material fact as to their failure to warn claim under the WPLA, such that this matter should be presented to a jury. The court therefore denies Defendant's motion for summary judgment with respect to this claim.

**B.     Plaintiffs Offer Sufficient Evidence to Support Their Claim of Express Warranty.**

Although Plaintiffs averred in their Complaint both that Defendant expressly and impliedly warranted that their product was safe to use, Plaintiffs only argued express warranty in their opposition to Defendant's motion for summary judgment and at oral argument. The court finds no additional basis for a claim of implied warranty and therefore dismisses this claim.

Plaintiffs' sole basis for their express warranty claim is that the Defendant's representative knew Mr. Kerzman used an extractor when cleaning spots off of carpet and told Mr. Kerzman that he could use DS-67 Plus in the same manner. Washington law defines an express warranty, *inter alia*, as "any affirmation of fact or promise." RCW § 62A.2-313(a). The court finds that the statement allegedly made by Defendant's representative is sufficient to put the question of express warranty to a jury.

To state a claim for express warranty under the WPLA, Plaintiffs must show that (1) the warranty was made part of the basis of the bargain; (2) the warranty relates to a material fact concerning the product; and (3) the warranty turns out to be untrue. RCW § 7.72.030(2)(b). Here, Plaintiffs' evidence is sufficient to establish a question of fact as to their breach of express warranty claim. The representative's affirmation that DS-67 Plus could be used with an extractor was made part of the bargain when Mr. Kerzman

ORDER – 11

explained to the representative that he intended to use the spot remover with an extractor. There is also evidence that this was a material part of the bargain, as Mr. Kerzman explained this was the purpose of his purchasing the product. Finally, there is little dispute that the representation, if made, was wholly untrue; DS-67 Plus cannot be used with an extractor. Accordingly, the court finds sufficient evidence to support Plaintiffs' express warranty claim.

Defendant also argues that Ms. Brostrom's claim for breach of warranty should be dismissed because she lacked privity with Defendant. While there is no dispute that Defendant's alleged representation was made to Mr. Kerzman and not Ms. Brostrom, in the context of a manufacturer's representation to a consumer, Washington courts relax the privity requirement. See Baughn, 727 P.2d at 669. Even with the relaxed requirements, however, Ms. Brostrom must come forth with some evidence that she was aware of the representative's warranty prior to her using the product. Id. Ms. Brostrom testified that Mr. Kerzman told her what he had learned from the representative and that it was okay to use the extractor. Brostrom Dep. at 93. Based on this testimony, the court finds that Ms. Brostrom has produced sufficient evidence to support her claim to privity with Defendant, such that she can assert a claim for express warranty.

The court finds that Plaintiffs raise a genuine issue of material fact as to all three elements of this claim. The court therefore denies Defendant's motion for judgment on this claim.

**C.     Defendant States a Legally Cognizable Claim For Comparative Fault.**

Plaintiffs move for judgment on Defendant's affirmative defense relating to nonparty fault. The court first addresses whether a motion for partial summary judgment on an affirmative defense is a proper motion. At least some courts have held that the proper method for seeking to strike an affirmative defense is pursuant to Rule 12(f) of the

ORDER – 12

Federal Rules of Civil Procedure. See Seacoast Liquor Distrib., Inc. v. Kips Bay Brewing Co., Inc., 8 F.R.D. 74, 75 (S.D.N.Y. 1947) ("It is difficult to see how the elimination of (an) affirmative defense could lead to any judgment, summary or otherwise. It would merely narrow the area of dispute; and the Rules do not appear to contemplate the use of the summary judgment procedure in situations such as the present one."); Krauss v. Keibler-Thompson Corp., 72 F.R.D. 615, 616 (D.C. Del. 1976). But see Furman v. Feneral Dynamics Corp., 377 F.Supp. 37, 43 (S.D.N.Y. 1974) (stating that a "motion to strike a defense is the equivalent of a motion for partial summary judgment . . ."). The court agrees with the former cases; to claim insufficiency of defense should not be considered a request for judgment but more aptly a request to strike it from the pleading. The court therefore consrues Plaintiffs' motion for partial summary judgment as a motion to strike pursuant to Rule 12(f).

Rule 12(f) provides that the court may order "stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A Rule 12(f) motion is, however, a rarity. The Ninth Circuit has never announced a standard for determining whether a defense is insufficient. District courts within the Ninth Circuit have uniformly stated that such motions are disfavored. See, e.g., Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1032-1033 (C.D. Cal. 2002) ("Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic."). In order to strike Defendants' allegedly "insufficient" affirmative defenses, Plaintiffs must show that "there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." Id. at 1032 (citations omitted). Plaintiffs seek a dismissal of Defendant's

ORDER – 13

affirmative defense of "non-party fault" because there is no evidence to support this defense.

First, it is not clear what language in Defendant's Answer Plaintiffs request stricken from the pleading (or, in their view, dismissed on summary judgment). Plaintiffs contend that Defendant alleges "non-party fault" as an affirmative defense, citing to paragraph 2.6 of Defendant's Answer. There are two paragraphs labeled 2.6 in Defendant's Answer; only one of which can be interpreted as asserting a defense of nonparty fault. The first paragraph 2.6 provides that "Plaintiffs' injuries or damages, if any, were solely and proximately caused by the negligence, fault, carelessness, recklessness or other misconduct of others, and not the fault of [Defendant], all of which preclude, reduce and/or mitigate any award or recovery of damages returned against [Defendant]. Answer at ¶ 2.6. The second paragraph 2.6 provides that "Plaintiffs injuries or damages, if any, were solely and proximately caused by an unavoidable accident and/or other preexisting and/or subsequent conditions, for which [Defendant] is not responsible and not at fault, all of which preclude, reduce and/or mitigate any award or recovery of damages returned against [Defendant]." Id. at second ¶ 2.6. Thus, the first paragraph 2.6 applies to other parties that may be at fault and the second applies to other intervening acts or conditions that may have caused Plaintiffs' injuries.

Interpreting Plaintiffs' motion as one to dismiss the affirmative defense plead in the first paragraph 2.6, the court finds that Defendant has plead sufficient legal bases for this affirmative defense. Plaintiffs claim that Defendant's failure to identify "any person or entity who is not a party to this lawsuit whose fault caused or may have caused Plaintiff's [sic] injuries or damages within the meaning of RCW 4.22.070," requires that this affirmative defense be stricken. Alternatively, Plaintiffs contend that the affirmative

ORDER – 14

defense of nonparty fault is not available to Defendant because this action relates to hazardous substance – i.e., DS-67 Plus.

Defendant counters that this affirmative defense covers Plaintiffs own fault as they are either entirely or partially responsible for their own injuries and for each other's injuries, and nothing in paragraph 2.6 limits its application to non-parties. Defendant also argues that the Little Green Bissell extractor was the "but for" cause of the flash fire and, therefore, some percentage of fault should be attributed to the Bissell Company. Defendant's affirmative defense is broad enough to cover the Plaintiffs' fault and not just "nonparty fault." On that basis alone, the court finds the affirmative defense properly plead and legally cognizable. Moreover, the court is satisfied that Defendant has identified nonparties whose fault may have caused Plaintiffs' injuries; Defendant identified the Bissell Company as another possible party at fault for Plaintiffs' injuries. Accordingly, the court denies Plaintiffs' contention that the affirmative defense should be dismissed because Defendant failed to identify another possibly liable nonparty.

It is apparent to the court that this motion is essentially a request by Plaintiffs that the court determine before trial whether the allocation of fault provisions of RCW § 4.22.070(1) apply to Plaintiffs' claims because their claims "relate[] to hazardous wastes or substances." RCW § 4.22.070(3)(a). Plaintiffs would like the court to rule, as a matter of law, that section 4.22.070(1)'s requirement that, if there is more than one entity at fault, the percentage of fault is to be allocated to every entity separately. Thus, there is only several liability, and no joint liability, under this provision. RCW § 4.22.070(1). In a cause of action relating to a hazardous substance, however, the Washington Legislature has retained the joint and several liability standard for allocating fault. RCW § 4.22.070(3)(a). Neither the Washington Legislature, nor the Washington courts, however, has defined "hazardous . . . substances" pursuant to this subsection. The

ORDER – 15

seminal case to address the meaning of the term hazardous substance under subsection (3)(a) is <u>Sofia v. Fireboard Corp.</u>, 771 P.2d 711, 727 (Wash. 1989). In <u>Sofia</u>, the Washington Supreme Court, sitting en banc, held that the term was not limited to cases involving environmental litigation, as argued by the defendants, but when given its plain and ordinary meaning, the term means any hazardous substance. <u>Id.</u> Thus, the <u>Sofia</u> court held that the trial court properly instructed the jury on joint and several liability because asbestos was conceded by the parties to be a hazardous substance. The <u>Sofia</u> court did not provide any further guidance to future litigants on how to determine which products trigger the hazardous substance exception.[5]

A federal court, sitting in diversity, is bound by the decision of the highest state court. <u>Dimidowich v. Bell & Howell</u>, 803 F.2d 1473, 1482 (9th Cir. 1986), <u>reh'g denied</u>, <u>op. modified</u>, 810 F.2d 1517 (9th Cir.1987). In this case, the highest court in Washington has spoken and directed that subsection (3)(a)'s exclusion for hazardous substances be interpreted to include its ordinary and plain meaning. The next question then is whether DS-67 Plus can be considered a "hazardous substance." The court is mindful of the limited nature of its review on a motion to strike. Generally, the court only determines whether there is sufficient legal basis and whether there is any set of facts under which the defense could succeed. In determining whether the allocation of fault to a nonparty is possible as averred in Defendant's affirmative defense, however, the court must reach the legal question of whether DS-67 Plus is a "hazardous substance." If it is a hazardous substance than an affirmative defense based on nonparty fault would be improper.

---

[5]The court declines to exercise its discretion to certify this issue to the Washington Supreme Court. The <u>Sofia</u> case was decided almost 20 years ago and, since that time, the Washington Legislature has not modified its holding. Accordingly, the court finds no basis for referring this issue.

ORDER – 16

The court finds that there is sufficient legal basis to conclude that the solvent is a hazardous substance. The court looks first to the definition of "hazardous substance" found in Washington's Hazardous Waste Management Act ("HWMA"). RCW § 70.105.010(14). The HWMA defines a hazardous substance as "any liquid, solid, gas, or sludge, including any material, substance, product, commodity, or waste, regardless of quantity, that exhibits any of the characteristics or criteria of hazardous waste as described in rules adopted under this chapter." Id. The characteristics or criteria of hazardous waste include a substance that poses "a substantial present or potential hazard to human health . . . or the environment" because such waste is "corrosive, explosive, [or] flammable." RCW § 70.105.010(5)(b). The court interprets "hazardous substance" under RCW § 4.22.070 to be consistent with the definition contained in the HWMA. Because there is no dispute that DS-67 Plus is both explosive and flammable, the court finds that Defendant is joint and severally liability with other non-parties, if a jury determines it is at least partially liable. Moreover, the court notes that both of the Defendant's experts and the MSDS for DS-67 Plus indicate that it is a highly flammable, highly toxic chemical that contains a number of hazardous substances.

Finally, the court is not convinced that its holding that DS-67 Plus is a hazardous substance would essentially cause the exception to "swallow the whole," as argued by Defendant's counsel. Defendant's argument that to give hazardous substance its plain and ordinary meaning would amount to a finding that even products as benign as water and concrete fall into this category, is unpersuasive. The court concludes that a hazardous substance can easily be defined within reason. In any event, there is little doubt that the product at issue in this case is a hazardous substance.

The court's finding that the provision of section 4.22.070 do not apply to this cause of action does not dictate dismissal of Defendant's affirmative defense relating to

ORDER – 17

the fault of others. Plaintiffs may be comparatively negligent in this action and therefore Defendant's defense is proper as it relates to their negligence. The court therefore denies Plaintiffs' motion to strike Defendant's affirmative defense.

### IV.  CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendant's motion (Dkt. # 54), and DENIES Plaintiffs' motion (Dkt. # 58).

Dated this 9th day of March, 2007.

_____
JAMES L. ROBART
United States District Judge

ORDER – 18